MORRIS *v.* PIERSON AND BROTHER ET AL.

[No. 13,400.   Filed December 5, 1929.   Rehearing denied February 21, 1930.   Transfer denied April 25, 1930.]

*Hamill, Hickey & Harris* and *Frank Hamilton,* for appellant.

*Stimson, Stimson & Davis, Walker & Hilleary* and *Charles A. Peck,* for appellees.

NEAL, P. J.—The salient facts and the legitimate inferences to be drawn therefrom favorable to appellees may be summarized as follows:

Appellant, in the year 1925, was engaged in selling lots

in Englewood, a subdivision near Terre Haute, Indiana. The purchasers of the several lots were laboring men who worked in the coal fields of Ohio and Pennsylvania. On July 31, 1925, appellees Antoni and Frances Lewandowski, husband and wife, purchased of appellant lot No. 228 in the named subdivision for the consideration of $495, on the payment plan, which payments were paid when the same fell due. Shortly after the purchase of the lot, appellees Lewandowskis made an agreement with appellant to build a house on their lot at a cost of $2,950. A few days subsequent to the agreement to build, appellant, under date of August 19, 1925, advised appellee Antoni Lewandowski, by letter addressed to him at Dun Glen, Ohio, that one Cooksey (who was the agent of appellant) had forwarded to his office a contract for a six-room house, style "Howard," to be built on lot 228, and that he (appellant Morris) was making arrangements to start building, and the house was expected to be completed in about 30 days; that Lewandowski was to give Cooksey the sum of $500, "the first payment," to help pay the labor costs on the house; that several homes were in the course of construction with more to start soon. On August 22, 1925, Cooksey received of appellee Antoni Lewandowski $500, and gave appellee, in writing, a memorandum of the tenor as follows: That A. R. Morris and Company, by C. S. Cooksey, acknowledged the receipt of $500, from Antoni Lewandoswki as part payment on a house to be built on lot No. 228, in Englewood Addition, Terre Haute, Indiana; that the style was to be "Howard," six rooms, well, pump, furnace, electric lights, concrete steps and toilet, wall board three feet high around both back rooms, basement 7x18x24, stucco exterior, asphalt shingles and pantry.

In July, 1925, one Cassius Knight, in the employ of

appellee Pierson and Brother, a corporation, engaged in the retail lumber business in Terre Haute, in the capacity of an architect and estimator, at the direction of the president of the corporation, had a conversation with appellant in regard to the building of houses on the several lots in Englewood Addition. The building of six-room houses was discussed, plans were exhibited by Knight to Morris, the cost was estimated around $2,300, and Knight advised Morris that he would leave the plan books and secure a contractor to figure on the several houses and give Morris a definite price. On Saturday, August 8, 1925, Morris advised Knight, by telephone, that "he had a couple of his people coming in and expected to make contracts, and he would like to have a more definite understanding as to the cost," requesting a conference at the office of appellee Pierson and Brother at 10 o'clock Sunday morning. On Sunday, Knight, representing appellee Pierson and Brother, appellee Peck, appellant Morris and his agent, Cooksey, met at the office of Pierson and Brother. It was made known to all present that appellee Peck was a building contractor. In the course of the conversation, the prices of the respective houses to be constructed were discussed and appellee Peck advised Morris that the estimates were low; however, if Morris intended to build several houses, he (Peck) would be glad to take them at the prices figured. Morris inquired whether the estimate included a well and outside toilet, which question was answered in the negative by appellee Peck. The additional cost was then given Morris by Peck. Knight, at the request of Morris, secured several contracts in blank and, when the same were produced, Morris asked Knight "if he would care to fill out a sample for him in regard to the way the house was to be built" which was done by Knight "filling in the sizes and the dimensions." Knight took one of the plan books of Pierson and Brother, which

consisted of pictures and floor plans of houses, and exhibited to Morris a plan of a six-room house with closets between the two bedrooms, with different elevations, one called "Burnett," the other "Howard." Appellee Peck had given Morris an estimate on each of the houses. Morris made a request for several of the blank contracts, which request was complied with by Knight.

At the next meeting of the parties on the following Tuesday at the office of appellant, Morris, two men, a Mr. Klinski and a Mr. Pelc, who had each purchased a lot from appellant Morris were present. In the conversation, Morris wanted to know if Peck could not employ Klinski and Pelc until Morris could secure jobs for them in the mines at 50 cents per hour. Peck agreed to give them employment at 40 cents, Morris to pay the difference. Morris then said: "Go right ahead and build these houses. I expect to build a lot of them. Go right ahead and start right away." Appellee Peck did build several houses on the lots designated by Morris; appellee Pierson and Brother did furnish the lumber, and other persons, engaged in selling building supplies or furnishing labor for special construction, furnished material and labor at the request of appellee Peck.

The house of appellee Lewandowski was "No 5." The estimate given on the house was $2,590, which included out buildings ordered by Morris. Appellant Morris was often present during the construction of the several houses.

In addition to the plan book, Knight made a pencil drawing of a six-room house, which drawing was given to Morris, and the "plan for the six-room house was the plan to be used by Mr. Peck, the contractor." Appellant Morris gave appellee Peck the order to build the house for Lewandowski, September 6, 1925, and the house was built by appellee Peck.

An instrument signed by appellee Antoni Lewandowski under date of August 17, 1925, was introduced in evidence, which was to the effect as follows: That Pierson and Brother of Terre Haute, Indiana, known as "the contractor," and Antoni Lewandowski and wife, of Dun Glen, Ohio, the owners, agree that "the contractor shall and will provide all labor and material for a new residence building 24x36, style 'Howard' to be erected on lot 228 in Englewood subdivision in the city of Terre Haute according to the plans furnished and specifications and conditions attached hereto"; that the owner shall pay to the contractor for the erection of the building according to the plans and specifications, the sum of $2,950, payable as follows: When basement wall or foundation is in and ready for house sills, $500; $500 house completed, possibly $800; "$1,000 when house is completed, balance loan." The contract contains complete building specifications. The above instrument does not purport to be signed by appellee Pierson and Brother. It was witnessed by C. S. Cooksey, and has always remained in the office of appellant Morris. Appellee Pierson and Brother by their officers and employees, denied that Pierson and Brother ever authorized its name to be placed in the instrument as contractor.

Testimony was given by several of the lot owners, who could neither read nor write English, that the contract to build was read in Polish by them, and that the name of Pierson and Brother was never read as the contractor, but that the name of "A. R. Morris and Company" was so read.

Appellant never paid appellees Peck nor Pierson and Brother. The $500 so received from appellee Lewandowski was deposited by appellant in his personal account. It was never returned to Lewandowski.

Appellee Pierson and Brother commenced this action by filing a complaint to foreclose a materialman's lien

on lot No. 228 owned by the Lewandoswkis, and to obtain a personal judgment against appellant; appellee Charles A. Peck, by cross-complaint, sought to foreclose a mechanic's lien against the same real estate and to obtain a personal judgment against Morris; other appellees, by their several cross-complaints, asked foreclosure of their liens and personal judgment against appellee Peck.

The court found for appellee Pierson and Brother as to the foreclosure of its lien, but denied a personal judgment against appellant. It also found for appellee Peck on his cross-complaint; that he was entitled to a personal judgment against Morris and foreclosure of his lien. The court also found for the other appellees on their respective cross-complaints; that they were each entitled to a personal judgment against appellee Peck on account of materials furnished and labor performed at the request of Peck, and each was entitled to foreclose his respective lien. Judgment followed the general finding.

Appellant assigns as error the overruling of his motion for a new trial. The only cause presented is that the decision of the court is not sustained by sufficient evidence.

Appellant says: "There is no evidence to establish a contract, express or implied, between appellant Arthur R. Morris and appellee Chas. A. Peck to build a house on appellees Lewandowski's lot, and hence no evidence in the case to establish a personal liability against Morris in favor of Peck."

There is evidence to the effect that appellant agreed and undertook to build a house for appellees Lewandowskis for the agreed consideration of $2,950, on the lot which he had sold and conveyed them; also evidence that on or about September 6, 1925,.

appellant employed appellee Peck to construct the house in question for the agreed sum of $2,590, and the evidence shows that Peck did, pursuant to said employment, construct the house, and that he was never paid any part of the consideration therefor; that the house was constructed pursuant to the plans and specifications which were included in the building contract signed by appellee Lewandowski, which was witnessed by appellant's agent Cooksey, and remained in the office of appellant, and under his control. There was some evidence to establish an express contract between appellant and appellee Peck to build the house in question. The court did not err in finding that appellee Peck was entitled to recover on his cross-complaint against the appellant and have foreclosure of his lien.

Appellant said "there is no evidence in the case to establish a right to a lien in favor of appellee Pierson and Brother against the real estate of the appellees, the Lewandowskis." The appellee Pierson and Brother did furnish the lumber to construct the house in question. The Lewandowskis made default as to appellee Pierson and Brother's complaint and as to appellee Peck's cross-complaint, and, by their defaults, admitted the material averments of each of said pleadings to be true. §§410, 431 Burns 1926; *McKinney* v. *State, ex rel.* (1885), 101 Ind. 355; *Ayrshire Coal Co.* v. *Thurman* (1920), 73 Ind. App. 578, 127 N. E. 810, 128 N. E. 764.

It will be observed that the court denied appellee Pierson and Brother a personal judgment against appellant, Morris, for the value of the building material so used in the house in question, but did find that appellee Pierson and Brother was entitled to have foreclosure of its lien. The evidence is sufficient to sustain the finding of the court that appellee

Pierson and Brother was entitled to have foreclosure of its lien.

We agree with appellant that some of the evidence does disclose facts compatible with appellant's theory that he acted as the agent of appellee Pierson and Brother in securing contracts to build the several houses; that we do have some evidence that would have supported a finding that appellee Peck was in the employ of appellee Pierson and Brother. It was within the province of the trial court, however, the evidence being in conflict, to decide which evidence was more worthy of belief. The court found against appellant, and, there being some evidence to sustain the general finding, we cannot say the decision of the court is not sustained by sufficient evidence.

Judgment affirmed.